UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT SKYLSTAD,

                  Plaintiff,

     v.

STATE OF WASHINGTON, et al.,

                 Defendants.

CASE NO. 2:18-cv-01636-JCC-BAT

**REPORT AND RECOMMENDATION**

Plaintiff Scott Skylstad is an inmate currently housed at the Department of Corrections' Cedar Creek Corrections Center (Cedar Creek). His claims involve conduct which occurred at the Monroe Correctional Complex (MCC), where he was previously housed. Plaintiff alleges he was denied a Muslim prayer rug because he is White and that he was retaliated against after he complained about being denied a rug when other practitioners of Islam were given rugs. He brings eight causes of action: 1) violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) (religious exercise); 2) violation of RLUIPA (discrimination on the basis of religion); 3) denial of equal protection (under 42 U.S.C. § 1983); 4) violation of the First Amendment's free exercise of religion (under 42 U.S.C. § 1983); 5) retaliation for exercising First Amendment rights (under 42 U.S.C. § 1983); 6) respondeat superior–State of Washington; 7) violation of the Washington Law Against Discrimination (Wash. Rev. Code § 49.60, et seq.) (WLAD) (religious discrimination); and 8) violation of WLAD (retaliation). Dkt. 1-2.

REPORT AND RECOMMENDATION - 1

Defendants State of Washington and the Washington Department of Corrections (collectively "State Defendants") move to dismiss Plaintiff's complaint because they are not "persons" subject to suit under 42 U.S.C. § 1983, respondeat superior is not cognizable under 42 U.S.C. § 1983, Plaintiff's claims for injunctive relief are moot, and the WLAD does not apply to prisons. Dkt. 12. Defendants Henri Fischer, Theresa Cohn, Lisa Anderson, and Julius Monroe (collectively "Individual Defendants")[1] join the State Defendants' motion to dismiss and add that dismissal is proper because Plaintiff does not have a constitutional right to a free prayer rug and even if he did, they are entitled to qualified immunity because the law was not so well established that a reasonable officer would have known that temporarily denying Plaintiff a free prayer rug violated his rights; and that Plaintiff's equal protection, free exercise, and retaliation claims are inadequately pled. Dkts. 17 and 23.

For the reasons set forth below, the State Defendants' motion to dismiss should be granted in its entirety and the individual Defendants' motion to dismiss should be denied as to Plaintiff's equal protection and free exercise claims, but granted as to Plaintiff's remaining claims. It is further recommended that Plaintiff be granted leave to amend his complaint as to his Section 1983 retaliation claim, and that Defendants' motion to stay discovery be denied.

## PLAINTIFF'S ALLEGATIONS

Plaintiff is a student of the Nation of Islam, which is of the Shia Tradition. On February 3, 2017, Chaplains Henri Fischer and David Sherman issued a letter to MCC staff and offenders stating that all MCC Muslim offenders working or attending programs should be allowed to observe their Family Obligatory Prayers. Dkt. 1-2, ¶ 14. On March 21, 2017, Plaintiff submitted

---

[1] Dominic Franzo and Don Wood are also named as defendants but have not yet entered an appearance or filed an answer. See Dkt. 18 (Plaintiff's "Proof of [Substituted] Service of Summons and Complaint").

REPORT AND RECOMMENDATION - 2

a kite requesting a prayer rug, stating "I'm a non-Sunni Muslim and would like to be able to pray in my cell. Thank you." *Id.*, ¶ 16. Because he had received the exact same kite from Plaintiff's cellmate, Chaplain Fischer asked Plaintiff "what Madhab (school of Islamic interpretation)" he subscribed to. *Id.*, ¶ 17. On March 28, 2017, Plaintiff responded that he was a student "of the Nation of Islam Shite tradition/interpretation. Because the Sunni's belief system contradicts what I'm studying, I will be a private practitioner. Please send me a prayer rug so I can practice. I believe I am within my religious freedom of rights to do so. Thank you." *Id.*, ¶ 18.

On March 30, 2017, Chaplain Fischer denied Plaintiff's request, stating "These prayer rugs were donated by Muslim sponsors for the active participants in the Muslim program. Sorry. --- And are you going to have me believe that a white man is part of the nation of Islam? GIVE ME A BREAK!" *Id.*, ¶ 19. Plaintiff filed complaints and grievances. *Id.*, ¶¶ 21-23.

On August 8, 2017, Defendant Williams, the Correctional Program Manager, met with Plaintiff and Chaplain Fischer to investigate Plaintiff's complaints. *Id.*, ¶ 24. On August 29, 2017, Associate Superintendent Lisa Anderson denied Plaintiff's grievance because Plaintiff had not practiced the Muslim religion. *Id.*, ¶ 25.

Shortly after Plaintiff submitted his June 9, 2017 complaint, he was retaliated against. He received a new cellmate, who was a known drug user, and his request for another cellmate was denied although such requests are routinely granted. *Id.*, ¶¶ 28-30. Defendants Franzo, Monroe, and Wood retaliated against him by administering a strip search and urine analysis; by maintaining that his first urine sample had been altered or diluted and by administering a second test but not testing further to determine which of the two tests was accurate; by alleging Plaintiff threw an object into the toilet; and, by placing him in Administrative Segregation (IMU) where he stayed for over two months (during the investigation, the hearing on July 18, 2017, and even

REPORT AND RECOMMENDATION - 3

1    after dismissal of his infractions on July 18, 2017). *Id.*, ¶¶ 31-37. On September 16, 2017,

2    Plaintiff wrote a complaint about Defendant Cohn for "fabricating false information in her

3    FRMT report." *Id.*, ¶ 38. Although Defendant Cohn recommended that Plaintiff be transferred to

4    close custody, he was ultimately placed in the Minimum Security Unit in October of 2017. *Id.*, ¶

5    39.

6        After he was transferred, Plaintiff lost access to his mentor who taught him about the

7    Nation of Islam and he has not found another mentor. *Id.*, ¶ 40. In November 2017, Plaintiff was

8    issued a prayer rug. However, because he had been refused a rug for six months and was placed

9    in the IMU away from his mentor, he was unable to learn how to practice independent prayer and

10    use the rug, "rendering it useless as he is now a student without a teacher." *Id.*, ¶¶ 41-42. Plaintiff

11    seeks a declaratory judgment and general damages in the amount of $350,000. *Id.*, p. 16.

12                            **STANDARDS OF REVIEW**

13    **1.    Motion to Dismiss – Rule 12(b)(6), Fed. R. Civ. P.**

14        Dismissal is appropriate when a complaint fails to allege facts to state a claim for relief

15    that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible

16    when it includes "factual content that allows the court to draw the reasonable inference that the

17    defendant is liable for the misconduct alleged." *Id*. These facts, taken as true, must "give rise to

18    an entitlement to relief." *Id*. at 679.

19    **2.    42 U.S.C § 1983**

20        To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

21    violation of rights protected by the Constitution or created by federal statute, and (2) the

22    violation was proximately caused by a person acting under color of state law. *Leer v. Murphy*,

23

REPORT AND RECOMMENDATION - 4

1   844 F.2d 628, 632-633 (9th Cir. 1988). A defendant cannot be held liable under 42 U.S.C. §

2   1983 solely on the basis of supervisory responsibility or position. *Monell v. Dep't of Soc. Serv.*,

3   436 U.S. 658, 694 n.58 (1978). Rather, each defendant must have violated the Constitution

4   through his own, individual actions. *Iqbal*, 556 U.S. at 676. When a plaintiff fails to allege or

5   establish one of these elements, his complaint must be dismissed.

**DISCUSSION**

6

7   **A.    A State And Its Agencies Are Not "Persons" Subject to Suit Under 42 U.S.C. § 1983**

8           To state a cognizable claim under 42 U.S.C. § 1983, the defendant must be a person

9   acting under color of state law. *Leer*, 844 F.2d at 632. But neither the State of Washington nor its

10  agencies are "persons" under the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64

11  (1989). Plaintiff concedes that neither the State nor the Department of Corrections is a person

12  subject to suit under 42 U.S.C. § 1983. *See* Dkt. 19 at 1.

13          Accordingly, it is recommended that Plaintiff's 42 U.S.C. § 1983 claims of denial of

14  equal protection (Claim Three); deprivation of free exercise of religion (Claim Four), and

15  retaliation (Claim Five), be dismissed as to the State Defendants.

16  **B.    Plaintiff's Claim for Injunctive Relief is Moot**

17          Plaintiff refers to injunctive relief several times in his complaint: ¶ 47 ("plaintiff is

18  entitled to injunctive and declaratory relief); ¶ 52 (same); ¶ 59 ("Plaintiff is entitled to issuance

19  of a preliminary and permanent injunction granting the relief described in the Prayer for Relief

20  below.") However, Plaintiff does not describe the injunctive relief requested in his prayer for

21  relief nor does he provide facts to support a claim entitling him to such relief.

22          The jurisdiction of a federal court depends on the existence of a live case or controversy.

23  *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). If an issue in a case is no longer in dispute,

1    or if a party receives the requested relief, the issue is moot. Here, Plaintiff admits he ultimately

2    received the prayer rug he requested. Dkt. 1-2, ¶ 41. He has therefore received the requested

3    relief so his request for injunctive relief is moot. Moreover, Plaintiff fails to show a

4    "demonstrated probability" that he will again be subject to the specific injury for which he seeks

5    such relief. *See Nelsen v. King Co.*, 895 F.2d 1248, 1250 (9th Cir.1990) (citing *Kolender v.*

6    *Lawson*, 461 U.S. 352, 355 n. 3 (1983)). The "'mere physical or theoretical possibility' of a

7    challenged action again affecting" the litigant is not enough. *Id.* (quoting *Murphy v. Hunt*, 455

8    U.S. 478, 482 (1982)). As a general rule, claims for injunctive and declaratory relief are mooted

9    by release from prison or transfer to another institution. *Walker v. Beard*, 789 F.3d 1125, 1132

10    (9th Cir. 2015).

11        Plaintiff was transferred to Cedar Creek (*see* Dkt. 1-2, ¶ 3), and he does not claim that

12    any of the alleged conduct he experienced at MCC is continuing at Cedar Creek or that his

13    circumstances warrant injunctive relief. Because Plaintiff is no longer subject to the defendants,

14    or to MCC's policies or procedures, and he has not shown a demonstrated probability that he will

15    again be subjected to the specific injury of which he complains, his claim for injunctive relief is

16    moot and it is recommended that it be dismissed.

17    **C.    Recovery of Damages for Mental and Emotional Distress**

18        Plaintiff alleges that he has suffered mental and emotional distress as a result of

19    Defendants violation of his First Amendment rights under RLUIPA. Dkt. 1-2, ¶¶ 1, 47, 52.

20    Individual Defendants argue that because Plaintiff does not allege any physical injury, he may

21    not recover for mental and emotional damages. *See* 42 U.S.C. § 1997e(e). Because Plaintiff is

22    not asserting a claim for "mental or emotional injury," but is asserting a claim for violation of his

23    First Amendment rights, he is entitled to judicial relief wholly aside from any physical injury he

REPORT AND RECOMMENDATION - 6

1   can show, or any mental or emotional injury he may have incurred and § 1997e(e) does not apply

2   to First Amendment Claims regardless of the form of relief sought. *Canell v. Lightner*, 143 F.3d

3   1210, 1213 (9th Cir. 1998) (§ 1997e(e) does not apply to First Amendment claims regardless of

4   the form of relief sought).

5        However, as detailed below, the Court is recommending that Plaintiff's RLUIPA claims

6   be dismissed on other grounds so this issue is moot.

7   **D.    Plaintiff Has no Available Relief Under RLUIPA (Claims One and Two)**

8        Plaintiff has brought two claims under RLUIPA—one based on religious exercise and

9   another based on discrimination. Dkt. 1-2, ¶¶ 43-52. These claims fail because there is no relief

10   available to him under RLUIPA.

11        Because a litigant may not recover monetary damages under RLUIPA, the only relief

12   available is injunctive relief. *Sossamon v. Texas*, 563 U.S. 277, 131 S. Ct. 1651, 1658 (2011);

13   *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). As previously discussed, Plaintiff is no longer

14   housed at MCC, he was given a prayer rug, and he has not alleged any facts giving rise to related

15   claims at Cedar Creek. Thus, any claim for injunctive relief is moot.

16        Plaintiff counters that he did not bring his RLUIPA claims in federal court and because

17   Defendants removed the case from state court to federal court, they waived their Eleventh

18   Amendment immunity. Plaintiff provides no authority for the proposition that the State waived

19   its sovereign immunity and consented to suit under RLUIPA. Even if such a waiver occurred, it

20   would not avail Plaintiff. First, removal of a case to federal court does not waive immunity. *See*

21   *e.g. Will*, 491 U.S. 58, 109 S.Ct. 2304, 2308. Second, even if removal constituted a waiver,

22   Plaintiff's claim for damages under RLUIPA remain insufficient as a matter of law. Even if the

23   State is able to waive its Eleventh Amendment immunity, the fact remains that RLUIPA does not

1  authorize suits against state actors (including prison officials) acting in their individual capacities

2  and does not authorize money damages against state officials, whether sued in their official or

3  individual capacities.

4      Without injunctive relief, Plaintiff has no relief under RLUIPA and therefore, it is

5  recommended that his RLUIPA claims be dismissed.

6  **E.    Section 1983 - Equal Protection (Claim Three) Defendants Fisher and Anderson**

7      The Equal Protection Clause requires that persons who are similarly situated be treated

8  alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v.*

9  *California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*,

10  705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An

11  equal protection claim may be established by showing that Defendants intentionally

12  discriminated against Plaintiff based on his membership in a protected class, *Hartmann*, 707 F.3d

13  at 1123; *Furnace*, 705 F.3d at 1030; *Comm. Concerning Cmty. Improvement v. City of Modesto*,

14  583 F.3d 690, 702-03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003);

15  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated

16  individuals were intentionally treated differently without a rational relationship to a legitimate

17  state purpose, *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008);

18  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *North Pacifica LLC v. City of*

19  *Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

20      Based on a liberal construction of Plaintiff's allegations, Plaintiff states a cognizable

21  equal protection claim against Defendants Fisher and Anderson that he was denied access to a

22  prayer rug because of his race when other practitioners of Islam were given a prayer rug. The

23  undersigned recommends that Individual Defendants' motion to dismiss this claim be denied.

REPORT AND RECOMMENDATION - 8

**F.    Section 1983 - Free Exercise of Religion (Claim Four) Defendants Fisher and Anderson**

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1997)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Based on a liberal construction of Plaintiff's allegations, Plaintiff states a cognizable free exercise claim against Defendants Fisher and Anderson for denial of access to a prayer rug for six months and the loss of his religious mentor following a sequence of alleged retaliatory acts resulting in Plaintiff's transfer. Plaintiff may well be unable to prove that these denials substantially burdened the exercise of his religious beliefs. However, that is not his burden at this stage of the proceedings. He must only allege facts that, when accepted as true, state a claim for relief. Thus, the undersigned recommends that Individual Defendants' motion to dismiss this claim be denied.

**G.    Section 1983-Retaliation (Claim Five) Defendants Cohn, Franzo, Monroe, Wood, and Anderson**

Plaintiff admits his retaliation claim is inadequately plead and requests leave to amend. Dkt. 21, p. 8. That request should be granted *as to Claim Five only*. As discussed below, Plaintiff's claim alleging retaliation under WLAD (Claim Eight) should be dismissed.

REPORT AND RECOMMENDATION - 9

1   **H.    42 U.S.C. § 1983 Claims Require Personal Participation (Claim Six)**

2          Plaintiff incorporates all of his Section 1983 claims into a claim against the State of

3   Washington based on "respondeat superior." Dkt. 1-2, ¶¶ 72-73. However, because Section 1983

4   requires personal participation, *see Iqbal*, 556 U.S. at 676, respondeat superior does not apply

5   here. Therefore, it is recommended that Claim Six be dismissed with prejudice.

6   **I.    WLAD Does Not Apply to Prisons (Claims Seven and Eight)**

7          Plaintiff brings two claims under the Washington Law Against Discrimination (WLAD)

8   – religious discrimination and retaliation. Dkt. 1-2, ¶¶ 74-80. WLAD prohibits discrimination,

9   including religious discrimination, but it does not present a freestanding claim for allegations of

10  discrimination. Wash. Rev. Code §§ 49.60.010, et seq. To have a claim under WLAD, a litigant

11  must allege an unfair practice with respect to credit transactions, insurance transactions,

12  employers, labor unions, employment agencies, real estate transactions, or a place of public

13  resort, accommodation, assemblage, or amusement. *See* Wash. Rev. Code §§ 49.60.175 to .200;

14  49.60.215l 49.60.222 to .227.

15         Defendants argue that Plaintiff's claims must be dismissed because correctional facilities

16  are not places of public accommodation under WLAD. Plaintiff argues that the statute applies to

17  correctional facilities because areas "within prisons, particularly those relating to religion, are

18  clearly places of assemblage and/or public resort." Dkt. 19, p. 3. The plain language of the

19  statute, examples of covered entities in the statute, and judicial analysis of the statute do not

20  support Plaintiff's contention that correctional facilities are public places.

21          The WLAD ensures that all people have "right to the full enjoyment of any of the

22  accommodations, advantages, facilities, or privileges of any place of public resort,

23  accommodation, assemblage, or amusement . . . ." Wash. Rev. Code § 49.60.030. The question

REPORT AND RECOMMENDATION - 10

here is whether the prison qualifies as a "place of public resort, accommodation, assemblage, or amusement."

Correctional facilities do not accommodate the public as members of the general public must obtain permission before they are permitted to enter and are restricted to the areas they may enter. *See Vega v. United States,* 724 F. App'x 536, 540 (9th Cir. 2018) (unpublished) ("members of the public cannot be 'accommodated'" at the prison absent a criminal sentence.) Even when considering a prison's visiting areas, which are the most "public" areas of prisons, this Court concluded that prisons are not places of public resort. *See Knight v. Wash. Dep't of Corr.*, 147 F. Supp. 3d 1165, 1172 (W.D. Wash. 2015) (rejecting WLAD claim regarding extended family visits in correctional facility).

The statute itself provides examples of "places of public resort, accommodation, assemblage, or amusement" as places "kept for gain, hire, or reward . . . ." Wash. Rev. Code § 49.60.040(2). Also included are places that charge "for admission, service, occupancy, or use[;]" places for the use or benefit of "those seeking health, recreation, or rest[;]" places where goods, merchandise, services, or personal property are sold or where personal services are rendered; places used "for public conveyance or transportation[;]" places that sell food and drink[;] places used for "public amusement, entertainment, sports, or recreation[;]" places offering "medical services or care[;]" places "where the public gathers, congregates, or assembles for amusement, recreation, or public purposes[;]" and, finally, public libraries, schools, and camps. *Id*. The types of places covered by the statute are "places that one would expect to be generally open to the public." *Knight*, 147 F. Supp. 3d at 1172. The statute's definition of "full enjoyment of" also supports this interpretation. "Full enjoyment of " "includes the right to purchase" services, commodities, or personal property offered or sold by "any establishment to the public[;]" and

REPORT AND RECOMMENDATION - 11

1   admission "to accommodations, advantages, facilities, or privileges of any place of public resort,

2   accommodation, assemblage, or amusement," without acts suggesting that a person is "not

3   welcome, accepted, desired, or solicited." Wash. Rev. Code § 49.60.040(15). The State The

4   Court agrees with Defendants that, when these definitions are interpreted together, "the

5   definitions compel the conclusion that the statute is intended to protect members of the general

6   public when they are frequenting public areas and commercial establishments" and that

7   correctional facilities do not fall within these categories.

8        Courts have found that under WLAD, "public accommodations" include restaurants,

9   parks and public resorts, movie theaters, a weight control clinic, and barbershops. *Fell v.*

10  *Spokane Transit Authority*, 128 Wash. 2d 618, 638 n.24, 911 P.2d 1319, 1329 n.24 (Wash.

11  1996). In *Vega v. United States*, this Court noted that "no Washington case has applied WLAD

12  to a prisoner's treatment by a jail or residential treatment center because they are not places of

13  public accommodation." No. C11-0632-RSM, 2012 WL 5384735, at *12 (W.D. Wash. Nov. 1,

14  2012). In *Kral v. King County*, this Court rejected plaintiff's discrimination claims against the

15  county correctional facility because correctional facilities are not places of public

16  accommodation. No. C10-1360-MAT, 2012, WL 726901, at *17 (W.D. Wash. Mar. 6, 2012). In

17  *Roufa v. Constantine*, No. C15-1379JLR, 2017 WL 120601, *12 (W.D. Wash. 2017)

18  (unpublished), after noting the many federal opinions holding that correctional facilities do not

19  qualify as places of public accommodation under the WLAD, this Court found that there was no

20  "compelling reason to depart from the reasoning of the many judges in the Western and Eastern

21  Districts who have concluded that jails are not places of public accommodation." *Id.*; *see also*

22  *Foley v. Klickitat County*, No. CV-08-3068-JPH, 2009 WL 5216992, at *6 (E.D. Wash. Dec. 30,

23  2009) (unpublished); *Kral v. Benton County*, No. CV-09-5014-RHW, 2009 WL 3856918, at *4

REPORT AND RECOMMENDATION - 12

(E.D. Wash. Nov. 10, 2009) (unpublished)("extending RCW 49.60.215 to courthouses and jails would be a significant and wholly unsupported leap from the types of facilities identified in the case law to date.").

Plaintiff argues that because none of these non-binding authorities involved religious rights, the Court should not dismiss his claims. However, Plaintiff offers no authority to support his contention that the statute, which clearly covers *places and facilities*, should apply depending on the *type* of discrimination alleged. Regardless of the type of discrimination alleged, either the prison falls within the statutory definition or it does not. Because the plain language of the statute and judicial authority interpreting the statute indicate that it does not, the undersigned recommends that Plaintiff's WLAD claims be dismissed with prejudice.

**J.    Individual Defendants Are Not Entitled to Qualified Immunity**

"[G]overnment officials performing discretionary functions [are entitled to] qualified immunity, shielding them from civil damages liability as long as their actions could have reasonably been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The first step in the qualified immunity analysis is whether the facts "[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendant's] conduct violated a constitutional right[.]" *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). As the Court has recommended that Claims One, Two, Six, Seven, and Eight be dismissed, the qualified immunity ends at this step as to these claims. *Id.* ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.") As the Court has granted Plaintiff leave to amend his claim for retaliation (Claim Five), a determination of qualified immunity is premature as to that claim.

REPORT AND RECOMMENDATION - 13

1    The second step is whether the right was clearly established at the time of the alleged

2    violation. *Id*. When identifying the right that was allegedly violated, a court must define the right

3    more narrowly than the constitutional provision guaranteeing the right, but more broadly than all

4    of the factual circumstances surrounding the alleged violation. *See Watkins v. City of Oakland*,

5    Cal., 145 F.3d 1087, 1092–93 (9th Cir.1998); *Carnell v. Grimm*, 74 F.3d 977, 979–80 (9th

6    Cir.1996). At this stage, assuming all allegations in the complaint are true, Plaintiff has

7    sufficiently alleged that defendants violated his equal protection (Claim 3) and First Amendment

8    free exercise (Claim 4) rights. Thus, the Court proceeds to determine whether the contours of the

9    rights implicated in those claims were clearly established. *See Saucier*, 533 U.S. at 201.

10    As to Plaintiff's equal protection claim, Individual Defendants argue that Plaintiff had no

11    right to a free prayer rug, he could have used something else or bought his own prayer rug, and

12    no reasonable prison official would have known that he was violating Plaintiff's rights when he

13    denied Plaintiff a free prayer rug for which Plaintiff did not qualify. Plaintiff does not allege that

14    he was denied a *free* prayer rug but that he was denied a prayer rug *because* he is White,

15    Defendants did not believe that he was a practitioner of Islam, and other practitioners of Islam

16    were given prayer rugs. He also alleges that in conjunction with being denied a prayer rug, he

17    was denied access to his religious mentor, which resulted from the Individual Defendants'

18    retaliatory conduct rather than from any neutrally based policy decisions (*i.e.* prison does not

19    purchase religious accessories; prison mandates cell assignments). It is well established that

20    inmates retain their right to be free from invidious discrimination, whether based on their race or

21    on their religion, and it is also well established that prison officials may not substantially burden

22    the practice of an inmate's religion by preventing him from engaging in conduct which he

23    sincerely believes is consistent with his faith.

REPORT AND RECOMMENDATION - 14

1    Therefore, the undersigned recommends Defendants' motion to dismiss on the basis of

2    qualified immunity be denied because the claims raised that survive dismissal appear to this

3    Court to involve violations of established constitutional rights sufficient to rebut an assertion of

4    the defense of immunity at this stage of the proceedings.

5                                                **CONCLUSION**

6            The undersigned recommends that the State Defendants' motion to dismiss be granted in

7    its entirety and all of Plaintiff's claims against the State Defendants be dismissed with prejudice.

8    Defendants Fischer, Cohn, Anderson, and Monroe's Motion to Dismiss should be **denied** as to

9    Claims Three (Section 1983 Equal Protection) and Four (First Amendment Free Exercise) and

10   **granted** as to Plaintiff's remaining claims. Therefore, Claims One, Two, Seven and Eight

11   **should be dismissed with prejudice**. However, Plaintiff should be granted leave to amend his

12   complaint as to Claim Five (Section 1983 Retaliation). Finally, the Individual Defendants'

13   motion to stay discovery should be denied.

14                                        **OBJECTIONS AND APPEAL**

15           This Report and Recommendation is not an appealable order. Therefore a notice of

16   appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

17   assigned District Judge enters a judgment in the case.

18           Objections, however, may be filed and served upon all parties no later than **February 11,**

19   **2019.** The Clerk should note the matter for **February 13, 2019**, as ready for the District Judge's

20   consideration if no objection is filed. If objections are filed, any response is due within 14 days

21   after being served with the objections. A party filing an objection must note the matter for the

22   Court's consideration 14 days from the date the objection is filed and served. The matter will

23   then be ready for the Court's consideration on the date the response is due. Objections and

REPORT AND RECOMMENDATION - 15

responses shall not exceed **twelve (12)** pages.  The failure to timely object may affect the right to appeal.

DATED this 14th day of January, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 16